IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| TERVEL BUTLER, | * | |
| Plaintiff, | * | |
| v. | * | Civil No. TJS-19-1509 |
| PRINCE GEORGE'S COUNTY, MD | * | |
| Defendant. | * | |

\* \* \* \* \* \*

**MEMORANDUM OPINION**

Pending before the Court is the Motion to Dismiss, or in the Alternative, Motion for Summary Judgment ("Motion") (ECF No. 20) filed by Defendant Prince George's County, Maryland (the "County").[1] Having considered the submissions of the parties (ECF Nos. 20, 23 & 24), the Court finds that a hearing is unnecessary. *See* Loc R. 105.6. For the following reasons the County's Motion will be granted.

**I.     BACKGROUND**

    **A.     Allegations in the Complaint**

The following facts are presented and considered by the Court in the light most favorable to Plaintiff Tervel Butler ("Mr. Butler"), the non-moving party. On February 1, 2010, Mr. Butler was hired by the County as a firefighter and emergency medical technician. (ECF No. 1 ¶ 8.) In June 2010, Mr. Butler filed a written complaint that a fire academy instructor had assaulted him. (*Id.* ¶ 9.) Mr. Butler asserts that the County "did not appear to take [the] complaint seriously," and that beginning with this complaint, "a pattern of employer reprisal began against" him. (*Id.*) On

---

[1] In accordance with 28 U.S.C. § 636(c), the parties have consented to me for all proceedings and the entry of judgment. (ECF No. 17.)

another occasion, Mr. Butler filed a written complaint that he "overheard a white supervisor using a racial slur while referring to a black firefighter." (*Id.* ¶ 10.) During the investigation into Mr. Butler's complaint about the racial slur, Mr. Butler asserts that he "was repeatedly warned to drop the complaint," which he refused to do. (*Id.*)

On May 30, 2012, Mr. Butler injured his neck and right shoulder "when he collided with an automatic door." (*Id.* ¶ 11.) Thereafter, he developed right shoulder tendinitis. He missed approximately two weeks of work to complete physical therapy. Upon returning to work, he resumed "full-duty status." (*Id.* ¶ 12.) Nonetheless, "the nature of his injury and [the] amount of lifting" required in his job "led him to repeatedly aggravate the injury." (*Id.*)

On January 7, 2016, Mr. Butler "seriously aggravated his shoulder injury while performing vehicle maintenance at his fire house." (*Id.* ¶ 13.) He underwent a second round of physical therapy. (*Id.*)

On September 15, 2016, Mr. Butler injured his shoulder again. (*Id.* ¶ 14.) Upon examination by medical providers, he was "diagnosed with tendinitis, muscle strain, lumbar spinal strain, and thoracic spinal strain." (*Id.*). He was ordered to do a third round of physical therapy and was prescribed medication. Mr. Butler took two months off from work. Upon returning to work, he was assigned to light duty for approximately three months. At the conclusion of his light-duty assignment, he returned to full-duty status. (*Id.*)

In February 2017, Mr. Butler was injured again. This time, he sustained "neck, shoulder and back injuries while carrying a fire hose into a burning house." (*Id.* ¶ 16.) He underwent physical therapy and was initially returned to full-duty status. (*Id.*) Mr. Butler protested his full-duty assignment and was thereafter "assigned to a light duty . . . but he was assigned a work detail that required him to lift boxes that exceeded weight limits prescribed by his doctor." (*Id.*) When

Mr. Butler complained about his assignment, he was criticized for not being a "team player." (*Id.*) When he asked to be reassigned to another light-duty assignment, he was "written up for going outside of his chain of command," and assigned to the warehouse for two months. (*Id.*)

Mr. Butler underwent a fitness for duty evaluation on September 7, 2017. (*Id.* ¶ 17.) He was deemed fully fit for duty with no restrictions and directed to return to work in a full-duty status on September 11, 2017. (*Id.*) Before returning to full-duty status, Mr. Butler was required to complete the fire academy's re-entry academy. During the training obstacle course element of this academy, Mr. Butler "seriously aggravated his shoulder injury" and asked to be excused from completing the obstacle course. (*Id.* ¶ 19.) Mr. Butler's request was denied, and he was ordered to complete the obstacle course. After completing the obstacle course, Mr. Butler filed an injury report. As part of his report, Mr. Butler recounted that he had been ordered to complete the obstacle course even after he requested to be excused. In an "attempt to cover up the fact that [he] was ordered back" into the obstacle course, Mr. Butler was "reprimanded for making a false statement and his pay was held for several months." (*Id.* ¶ 20.)

According to Mr. Butler's Complaint, "[f]irefighters are instructed not to work if they feel that they will be a liability to other firefighters or to the larger public." (*Id.* ¶ 21.) And "[i]f a firefighter knowingly enters duty status when he knows that he is unable to render safe service to the public or to his fellow firefighters, he is subject to discipline." (*Id.*) At some point, when Mr. Butler was assigned to a new fire station, he "immediately told his supervisors that he was a liability to coworkers and to patients." (*Id.* ¶ 22.) In response, he was told that he "if he refused to [work] he would be determined to have been absent without leave." (*Id.*) Each day at the new fire station, Mr. Butler "would show up for his shift, but he would leave after his request for light duty was denied." (*Id.*)

3

Mr. Butler alleges that he "endured a pattern of reprisal," which included being accused of faking his injury, being cursed at in public, receiving unfavorable assignments, being supervised while he performed physical therapy, and being socially ostracized within the fire department. (*Id.* ¶ 23.) On November 15, 2017, Mr. Butler had a disciplinary hearing for being absent without leave and was notified that he was being terminated effective November 30, 2017. (*Id.* ¶ 24.) Mr. Butler's appeal of the decision was successful, and he was reinstated on December 15, 2017. (*Id.*) On December 20, 2017, Mr. Butler was subject to a second disciplinary hearing for "unwillingness to perform." (*Id.* ¶¶ 25-26.) He was terminated on January 11, 2018. The termination notice cited three counts of unwillingness to perform (on September 27-29, 2019) as the cause of his termination. (*Id.* ¶ 26.)

B.     **Procedural History**

On March 15, 2018, Mr. Butler filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). (ECF No. 20-3.) In the Charge, he alleged that he had been discriminated against based on disability and in retaliation for his complaints about harassment and a hostile work environment. (*Id.* at 1.) On February 7, 2019, the EEOC issued Mr. Butler a Dismissal and Notice of Rights letter. (ECF No. 20-4.) The right-to-sue notice advised Mr. Butler that if he wished to file a lawsuit based on his Charge of Discrimination, it "must be filed within 90 days" of Mr. Butler's receipt of the notice. (*Id.* at 1.) Mr. Butler filed his Complaint on May 21, 2019. (ECF No. 1.)

C.     **Claims**

In the Complaint, Mr. Butler asserts four claims. In Count One, he alleges that the County discriminated against him in violation of the Americans with Disabilities Act. In Count Two, he alleges that the County is liable for intention inflection of emotional distress under Maryland law.

In Count Three, he alleges that the County violated the Maryland Health Care Worker Whistleblower Protection Act. In Count Four, he alleges wrongful discharge under Maryland law.

**II.     ANALYSIS**

Rule 12(b)(6) permits a court to dismiss a complaint if it fails to "state a claim upon which relief can be granted." "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint, [and not to] resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (internal quotation marks omitted). A complaint must consist of "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). When considering a motion to dismiss, a court must accept as true the well-pled allegations of the complaint and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

While "a court ordinarily may not consider any documents that are outside of the complaint, or not expressly incorporated therein," a court is permitted to "properly consider documents incorporated into the complaint or attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *NVR, Inc. v. Harry A. Poole, Sr. Contractor, Inc.*, No. ELH-14-0241, 2015 WL 1137739, at *5 (D. Md. Mar. 13, 2015) (internal citations and quotation marks omitted). "An integral document is a document that by its very existence, and *not the mere information it contains,* gives rise to the legal rights asserted." *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (internal quotation marks omitted) (emphasis in original).

Because the County has included materials outside of the Complaint for this Court to review, its motion will be treated as one for summary judgment. *See Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007); see also Fed. R. Civ. P. 12(d) and 56. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. *Id.* at 252.

The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008). A party may not rest upon the mere allegations or denials of its pleading but instead must, by affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial. Fed. R. Civ. P. 56(c)(1). Supporting and opposing affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and show affirmatively the competence of the affiant to testify to the matters stated in the affidavit. Fed. R. Civ. P. 56(c)(4).

In its Motion, the County argues that Mr. Butler's claims should be dismissed, or that summary judgment should be entered in favor of the County, for five reasons: (1) Mr. Butler failed to comply with Maryland's Local Government Tort Claims Act ("LGTCA"), Md. Code, Cts. & Jud. Proc. § 5-301 *et seq*; (2) Mr. Butler is not a covered "employee" and otherwise cannot

maintain an action against the County under the Health Care Worker Whistleblower Protection Act ("HCWWPA") pursuant to Md. Code, Health Occ. § 1-501 *et seq.*; (3) Mr. Butler failed to file his Complaint within ninety days of his receiving his EEOC right-to-sue notice; (4) Mr. Butler cannot prove a prima facie case of disability discrimination, and (5) Mr. Butler failed to exhaust his administrative remedies. The Court will address the County's arguments in turn.

A.   **Americans with Disabilities Act Claim (Count One)**

In Count One, Mr. Butler alleges that the County discriminated against him in violation of the Americans with Disabilities Act ("ADA"). He claims that the injuries to his shoulder, neck, and back rendered him disabled under the ADA, and that the County discriminated against him "by failing to make the reasonable accommodation of light duty status available [to him] until he was able to continue in full duty status." (ECF No. 1 ¶ 29.) The County argues that Mr. Butler's ADA claim must be dismissed because he did not file it within the limitations period governing ADA claims. (ECF No. 20-1 at 12.)

"Modeled after Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the ADA incorporates that statute's enforcement procedures, *id.* § 12117(a), including the requirement that a plaintiff must exhaust his administrative remedies by filing a charge with the EEOC before pursuing a suit in federal court, *see id.* § 2000e-5(b), (f)(1)." *Sydnor v. Fairfax Cty., Va.*, 681 F.3d 591, 593 (4th Cir. 2012). After the complainant files the charge with the EEOC, the ADA requires that the EEOC shall "notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent." 42 U.S.C. § 2000e-5(f)(1). The 90-day filing requirement is "not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Laber v. Harvey*, 438 F.3d 404, 429 n.25 (4th Cir. 2006) (quoting *Zipes v. Trans World Airlines, Inc.*, 455

7

U.S. 385, 393 (1982)). The 90-day period begins to run on the date that a claimant receives the right-to-sue notice. *See Davis v. Va. Commonwealth Univ.*, 180 F.3d 626, 628 (4th Cir. 1999).

In this case, the EEOC mailed the right-to-sue notice to Mr. Butler on February 7, 2019, (ECF No. 20-4), and the law presumes its receipt on February 10, 2019. *See Baldwin County Welcome Ctr. v. Brown,* 466 U.S. 147, 148 n.1 (1984) (for constructive receipt purposes, courts presume a mailing reaches the intended recipient within three days). Mr. Butler's lawsuit was not filed until May 21, 2019, which is 100 days after he is presumed to have received the EEOC's right-to-sue notice. Because Mr. Butler's lawsuit was not timely filed, his ADA claim must be dismissed.

Mr. Butler's arguments to the contrary are unavailing. First, although his brief states that he did not receive the EEOC's right-to-sue notice "by mail at any point" (ECF No. 23-1 at 7), he does not support this statement with admissible evidence. "If a claimant presents sworn testimony or other admissible evidence from which it could reasonably be inferred either that the notice was mailed later than its typewritten date or that it took longer than three days to reach her by mail, the initial presumption is not dispositive." *Weathersbee v. Baltimore City Fire Dep't*, 970 F. Supp. 2d 418, 427-28 (D. Md. 2013) (quoting *Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 526 (2d Cir. 1996)). Further, Mr. Butler admits that he received an email from the EEOC advising him of his right to sue, but he deleted it. Because Mr. Butler filed his lawsuit more than 90 days after he is presumed to have received the EEOC's right-to-sue notice, and because he has not rebutted this presumption with admissible evidence, his ADA claim is time-barred and must be dismissed. *See id.* (dismissing plaintiff's Title VII claims where plaintiff failed to properly rebut the presumption that he received a right-to-sue notice).

Mr. Butler's argument that he should be "allowed equitable tolling" also fails. (*See* ECF No. 23-1 at 7.)

> Equitable tolling applies in two general kinds of situations. In the first, the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96 (1990); *Harris v. Hutchinson,* 209 F.3d 325, 330 (4th Cir. 2000). In the second, "extraordinary circumstances beyond the plaintiffs' control made it impossible to file the claims on time." *Harris,* 209 F.3d at 330 (quoting *Alvarez–Machain v. United States,* 107 F.3d 696, 700 (9th Cir. 1996)).

*Crabill v. Charlotte Mecklenburg Bd. of Educ.*, 423 F. App'x 314, 321 (4th Cir. 2011). Neither of those situations apply here. Mr. Butler does not argue that he was induced into inaction or tricked by misconduct by the EEOC or the County to allow the deadline for his lawsuit to pass. Rather, he acknowledges that he received email notice of his right to sue. And there is no suggestion of any extraordinary circumstances beyond Mr. Butler's control that made it impossible to file his claims on time. "Federal courts have typically extended equitable relief only sparingly." *Id.* (citing *Irwin*, 498 U.S. at 96). Equitable tolling does not apply here.

For these reasons, Mr. Butler's ADA claim (Count One) will be dismissed.[2]

### B.     State Law Tort Claims (Counts Two, Three, and Four)

In Counts Two, Three, and Four, Mr. Butler asserts claims for monetary damages based on state law claims (respectively, for intentional infliction of emotional distress, violation of the Maryland Health Care Whistleblower Protection Act, and wrongful discharge).

Under Maryland law, compliance with the LGTCA's notice requirement is a condition precedent to any lawsuit filed against a local government (such as the County) regardless of

---

[2] The Court declines to address the County's alternative argument that Mr. Butler cannot prove a prima facie case of disability discrimination under the ADA. (*See* ECF No. 20-1 at 14.)

whether an action is a common law tort, constitutional tort, or a statutory cause of action.[3] *See* Md. Code, Cts. & Jud. Proc. § 5-304(b)(1) ("[A]n action for unliquidated damages may not be brought against a local government or its employees unless the notice of the claim required by this section is given within 1 year after the injury."). Any such notice "shall be in writing and shall state the time, place, and cause of the injury." *Id.* § 5-304(b)(2). In the case of lawsuits against the County, the "the notice shall be given to the county solicitor or county attorney." *Id.* § 5-304(c)(3). In addition to providing written notice to the County, a plaintiff must also plead compliance with the LGTCA in his complaint. *Hansen v. City of Laurel*, 420 Md. 670, 694 (2011) ("A plaintiff must not only satisfy the notice requirement strictly or substantially, but also plead such satisfaction in his/her complaint.").

In this case, Mr. Butler did not comply with the LGTCA's notice provision. At the latest, Mr. Butler was required to provide notice to the County "within 1 year after the injury," which was his termination on January 11, 2018. (*See* ECF No. 1 ¶ 26.) There is no dispute that Mr. Butler failed to provide notice of his intent to make any claims against the County, as required by the LGTCA, before he filed his Complaint. (*See* ECF Nos. 20-2 at 3 & 23-1 at 7.) In addition, Mr. Butler did not plead compliance with the LGTCA in his Complaint.

Under certain circumstances, however, "a litigant is excused from strict compliance with the notice obligation, so long as the purpose of the notice statute was fulfilled by substantial compliance with the statutory requirements." *White v. Prince George's County*, 163 Md. App. 129, 144 (2005) (internal quotation marks omitted). "Substantial compliance requires some effort to provide the requisite notice and, in fact, it must be provided, albeit not in strict compliance with

---

[3] Counts Two and Four are common law tort claims. Count Three is a statutory cause of action.

the statutory provision." *Id.* at 1137 (internal quotation marks and citation omitted). A plaintiff "substantially complies with the LGTCA notice requirement where: (1) the plaintiff makes 'some effort to provide the requisite notice'; (2) the plaintiff does 'in fact' give some kind of notice; (3) the notice 'provides . . . the requisite and timely notice of facts and circumstances giving rise to the claim'; and (4) the notice fulfills the LGTCA's purpose." *Ellis v. Hous. Auth. of Balt. City*, 436 Md. 331, 342-43 (2013) (ellipsis in original) (quoting *Faulk v. Ewing*, 371 Md. 284, 298-99 (2002)). "The substantial compliance doctrine only exists to provide leniency for claimants who attempt to give notice but 'not necessarily in a manner technically compliant with all of the terms of the statute.'" *Breen v. 7th Inning Stretch, LP*, No. DKC 18-1943, 2019 WL 3587690, at *3 (D. Md. Aug. 6, 2019) (quoting *Faulk*, 371 Md. at 299 (concluding there was substantial compliance even though the notice did not "include an envelope or other indicia of a postmark by the United States Postal service," and did not appear to be "sent via certified mail")).

Mr. Butler has not submitted any evidence that indicates he substantially complied with the LGTCA's notice requirements. He states that he "lodged several administrative complaints with various officials up to and including the fire department chief before he was terminated," that a union representative made complaints on his behalf, and that he "made a written complaint to the Prince George's County Government Office of Ethics and Accountability on April 24, 2018." (ECF No. 23-1 at 5.) Therefore, he argues, "it is difficult to imagine that Plaintiff's Complaint was not forwarded to the county attorney . . . when received by the Office of Ethics and Accountability." (*Id.* at 6.) Notably, Mr. Butler has not submitted any evidence to substantiate his claims regarding the numerous complaints he submitted, so there is no way for the Court to consider the content of these complaints and whether—if submitted to the appropriate official— they could have substantially complied with the LGTCA's notice requirement. Regardless,

11

however, even if his arguments are credited, they do not demonstrate substantial compliance. *See, e.g., Harrell v. Bealefeld*, No. CCB-11-3046, 2013 WL 931677, at *4 (D. Md. Mar. 7, 2013) (finding there was no substantial compliance where "notice '[did] not apprise the proper officials' that the plaintiffs were pursuing a claim") (quoting *Bibum v. Prince George's County*, 85 F. Supp. 2d 557, 564 (D. Md. 2000)); *see also Ellis*, 436 Md. at 344; *Hansen*, 420 Md. at 678. The Court finds that Mr. Butler has not substantially complied with the LGTCA statutory notice requirement.

In addition to the substantial compliance doctrine, the notice requirement of the LGTCA may be waived for good cause and lack of prejudice to the defendant. Md. Code, Cts. & Jud. Proc. § 5-304(d). *See, e.g., Breen*, 2019 WL 3587690, at *1. Section 5-304(d) provides:

> Notwithstanding the other provisions of this section, unless the defendant can affirmatively show that its defense has been prejudiced by lack of required notice, upon motion and for good cause shown the court may entertain the suit even though the required notice was not given.

The Plaintiff bears the burden to show good cause for lack of compliance with the LGTCA's notice requirement. *See Rounds v. Maryland-Nat. Capital Park & Planning Comm'n*, 441 Md. 621, 645 (2015). Good cause exists where "the claimant prosecuted his claim with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances." *Heron v. Strader*, 361 Md. 258, 271 (2000). Maryland courts have considered several factors in determining if "good cause" exists under the LGTCA, including:

> (1) excusable neglect or mistake (generally determined in reference to a reasonably prudent person standard),
> (2) serious physical or mental injury and/or location out-of-state,
> (3) the inability to retain counsel in cases involving complex litigation[,]
> (4) ignorance of the statutory notice requirement[,] or
> (5) misleading representations made by [a] representative of the local government.

*Breen*, 2019 WL 3587690, at *4 (alterations in original). Notably, "ignorance of the notice requirement, by itself, has been rejected as a cognizable factor showing good cause." *Id.*

Mr. Butler argues that good cause exists under the LGTCA for several reasons: he was not represented by counsel before he filed this lawsuit, he "relied on conflicting and often erroneous advice given to him by union representatives, fire department administrators and colleagues," and that the County has not suffered any prejudice because it "has been apprised of the nature of Plaintiff's allegations since at least April 2018." (ECF No. 23-1 at 8.) Mr. Butler has not demonstrated good cause. Although he was not represented by counsel, he has not submitted any evidence that he was unable to retain counsel, or that providing notice under the LGTCA was so complex that he required counsel to do so. In addition, Mr. Butler has not submitted any evidence (or even explanation) of the purportedly conflicting and erroneous advice that he relied on. But even taking him at his word, a reasonably prudent person would not rely on conflicting advice without determining which advice was reliable. Further, the Court notes that Mr. Butler was actively involved in asserting his rights throughout the relevant time. He filed administrative complaints to his supervisors. He participated in administrative hearings. He appealed adverse administrative decisions. He participated in termination hearings. He was represented by his union. (ECF No. 23-1 at p. 5-6.) These circumstances belie Mr. Butler's argument that he was unaware of his legal rights about how to bring a claim for unliquidated damages against the County. The Court finds that the Section 5-304(d) waiver of notice exception does not apply as Mr. Butler has failed to demonstrate good cause. *Rios v. Montgomery Cty.*, 386 Md. 104, 121 (2005) ("The question of whether good cause for a waiver of a condition precedent exists is clearly within the discretion of the trial court.") Because Mr. Butler has not demonstrated good cause, the Court does not reach the question of whether the County has been prejudiced. *See Curtis v. Pracht*, 202 F. Supp. 2d 406, 414 (D. Md. 2002) ("The Defendants' burden to show prejudice does not arise until a plaintiff establishes "good cause" to justify the failure to comply with the notice requirement.").

For these reasons, Mr. Butler's claims in Counts Two, Three, and Four of the Complaint are dismissed.[4]

## III. CONCLUSION

For the reasons set forth above, the County's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (ECF No. 20) is **GRANTED**. A separate Order will follow.

December 10, 2019  /s/
Date  Timothy J. Sullivan
 United States Magistrate Judge

---

[4] Mr. Butler's claim for violation of the Maryland Health Care Worker Whistleblower Protection Act (Count Three) will also be dismissed on an alternative basis. That statute provides a statute of limitations of "1 year after the alleged violation of § 1-502." Md. Code, Health Occ. § 1-504. Here, the latest possible violation of that statute that Mr. Butler alleges is his termination, which occurred on January 11, 2018. Mr. Butler did not file his complaint until May 21, 2019, which is more than four months after the statute of limitations ran for this claim. As such, Count Three of Mr. Butler's Complaint will also be dismissed because it is barred by the statute of limitations. Because the Court will dismiss Count Three for Mr. Butler's failure to comply with the LGTCA and because the claim is barred by the statute of limitations, the Court need not address the more intricate arguments regarding whether Mr. Butler is an "employee" protected by the Maryland Health Care Worker Whistleblower Protection Act.